## STATE v. BRINKMAN.

No. 4452.   Decided November 23, 1926.   (251 P. 364.)

*Fred. W. Crockett,* of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

THURMAN, J.

The information in this case charged the defendant, jointly with one Winger, with the crime of rape committed in Salt Lake county November 4, 1925. The defendant was tried separately in the district court of said county and convicted of the crime as charged. He was sentenced to an indeterminate term of imprisonment in the state prison. It is not contended by the state that the defendant Brinkman committed the crime by having sexual intercourse with the female named in the information, but that he aided and abetted Winger, who completed the act constituting the crime.

There is substantial evidence to the effect that on the evening of November 4, 1925, the prosecutrix and four girl companions were waiting at the intersection of Ninth South street and McClelland avenue, Salt Lake City, for a

car to take them to a show in the business portion of the city. While thus waiting defendant and Winger passed by in a Ford touring car. The boys after passing turned and asked the girls if they would like a ride up town. They said yes, if the boys would take all of them. Thereupon all of the girls got into the car and seated themselves upon the rear seat. After driving a short distance one of the boys suggested that if the girls were crowded one of them could get into the front seat with them. The prosecutrix then climbed over the front seat and sat down between the boys. The car was then driven to the Owl Drug Store, on the corner of Second South and Main streets. At this point the girls sitting in the rear seat got out. Some effort was made by the boys to persuade one of them to remain, but she declined. The boys then told the prosecutrix they would take her around the block for a ride, and started the car. The prosecutrix called back to the girls and requested them to wait until she returned. Instead of driving around the block and returning with the girl, as she expected, they drove on in the general direction of west and south until they reached the "Redwood road," on the west side of the Jordan river. While they were driving in this direction the prosecutrix kept insisting that they return her to the point where she had left the other girls. The boys promised to do so, but said there was a friend down at some point whom they desired to see. They drove on, and finally left the Redwood road and entered upon a road, unpaved and apparently not much used, and in a vicinity which was uninhabited. The prosecutrix repeated her protestations and expressed her desire to return. The boys said they would return as soon as they could find a point where they could turn the car. Finally Winger said that on account of the muddy road he would have to put chains on the wheels, and got out of the car ostensibly for that purpose and went back some distance behind the car. The prosecutrix asked the defendant to help Winger or she would help him herself. When Winger started back he said he had to get some rocks to jack up

the car. Defendant said, "Just as soon as he comes back I will help him put on the chains; get in the car, and we will wait until he comes back." Prosecutrix then got into the back seat and defendant did likewise. Defendant then made an indecent proposal to the prosecutrix and put his hand under her clothes. She started to fight with him and tried to make him quit. They fought for a while, and finally got out of the car. She testified that she struggled as hard as she could. When she got out of the car she ran up the road to Winger and asked him to help her, as the defendant had insulted her. Winger promised to do so, and said he would make defendant walk back to town if he could not be decent. They then got into the front seat of the car. Defendant was standing outside the car. Winger then made the same indecent proposal that defendant had made. Prosecutrix asked Winger, "Are you that kind of a boy, too?" and started to cry. The boys then took hold of her, and she fought them. In some way they got out of the car, and defendant got a blanket out of the car while Winger held her. She cried and begged them to quit. They said, "We have had girls before and know what you are, and you don't need to holler, because nobody can hear you; there is nobody down here that lives around here that could hear you if you did holler." They informed her that the only one that could hear her was a Mexican who lived in a little house near there, and that if she did not come to their terms he would do worse to her than they would. At that time she was struggling with both of them just outside of the car. Defendant then threw the blanket he had taken from the car on the ground while Winger held her. She was fighting as hard as she could. Winger threw her on the blanket while she was still fighting and crying. Defendant put his knee across her stomach and his hand over her mouth. She still fought all she could, but was almost exhausted. Winger took off her shoes and bloomers and also took her purse and threw them out into the road. The defendant then slid over her. His trousers were undone. She fought and kicked

him as hard as she could. Defendant got up and said she had kicked him and that he knew when he had had enough. Defendant then went over to the car, and Winger got over her and accomplished the act of sexual intercourse against her consent while she was fighting him as hard as she could and was crying all of the time and begging him to quit. Defendant turned the car around and came up opposite to where she and Winger were and called her vile and opprobious names. She got up and put her clothes on and defendant brushed her off. She did not know which way to walk to town. Defendant and Winger took her back in the car. Such is the substance of the evidence as detailed by the prosecutrix in her testimony in chief. It was substantially the same on cross-examination.

Defendant, as a witness in his own behalf, testified he thought the prosecutrix was a bad girl and tried to have intercourse with her with her consent. He denied using any force either for himself or to aid Winger. He admitted seeing Winger on top of the girl as testified to by her. His only reason for supposing she was a bad girl was the manner in which she climbed over from the back to the front seat of the car. He said she threw her legs over his head as she climbed over. He admitted that excepting that circumstance she conducted herself all through the trip as a decent girl. He also corroborated the testimony of the prosecutrix that she protested against going in the direction they were taking her and insisted upon being returned to town. The other girls who were in the car with her were sworn as witnesses and testified that they saw nothing immodest in the way the prosecutrix climbed over into the front seat.

The prosecutrix returned to her home that night quite ill. Dr. Spencer Wright, at whose home she resided, treated her for headache and nervous trouble before finding out what had happened. She did not tell him at first. She did, however, tell one or two of the girls who called next day to see her. She told them what had happened and showed them her lower limbs, which were badly bruised. A few days

after, Dr. Wright, having learned something of the affair, elicited from her a statement as to what had happened. He then made a physical examination and found her parts badly lacerated and torn, as bad, he said, as he had ever seen in his experience. From his examination he was satisfied she had never had sexual intercourse before.

Appellant assigns and relies on numerous alleged errors for which he seeks a reversal of the judgment. These will be disposed of in the order presented in appellant's brief.

Appellant challenged the juror Charles Peterson on the ground of actual bias. It appears from the examination of the juror that he had heard something about the case which he characterized as gossip. He stated he would not consider it against real evidence. He thought he could act with entire impartiality. The court denied the challenge. It does not appear that appellant exercised all his peremptory challenges. The denial of the challenge was not error. 35 C. J. p. 372.

Appellant assigns as error the refusal of the court to strike the answer of Dr. Spencer Wright, a witness for the state, to a question propounded during his examination in chief. The doctor had testified that the prosecutrix resided at his home, and was asked if he was acquainted with the defendant. He said he had met him when he was arrested on the Tuesday following the attack on the prosecutrix. He stated that the arrest was made down at the Presto-O-Lite station on the Redwood road. He was then asked what the occasion was of his being there, and answered, "I went down there in company with Miss Osborn (the prosecutrix) to identify the place and the men —to apprehend the ones who had attacked her." The answer was objected to as irrelevant, immaterial, incompetent, and as a conclusion of the witness. The motion to strike the answer was overruled. It is difficult to see upon any theory of the case why the court should have granted the motion. The question was not objected to, the answer was responsive to the question, and in view of the undisputed evidence in

the case, including the express admission of the defendant himself, he and Winger were the only persons who participated in any manner in what occurred at the time and place testified to by the prosecutrix concerning the alleged crime. Defendant admitted that when Winger went back behind the car he did so to give defendant a chance to make advances upon the girl; that it was understood between them that they would give each other a chance; and that he then proceeded to offer an insult to the girl. There is no merit in appellant's contention.

The third alleged error is the ruling of the court in overruling appellant's objection to the following question asked the prosecutrix by the district attorney:

"Anywhere, from the time you first got into the car until you came to Main street and from Main street down to the Prest-O-Lite station, did you do or say anything to give Mr. Winger or Mr. Brinkman the impression they could either of them take liberties with you?"

The witness answered: "I did not."

On objection made by defendant's counsel the court at first sustained it. Counsel then moved to strike the answer, whereupon the court inquired of the district attorney what he claimed for the answer. The district attorney said that "consent" was one of the issues in the case, "and in the journey, if she said or did anything giving them the impression that they could take liberties, it would be proper." The court then said: "The answer may stand." The objection was that the question called for a conclusion. This question was asked after the witness had been critically examined as to everything that was said and done by any one of the parties from the time the girls got into the car down to the point where the wrongs complained of occurred. Having been examined in detail as to everything that was said and done, she was then asked the question in controversy. Several reasons might be enumerated to show that appellant's objection was without merit. The record shows that appellant's counsel cross-examined the prosecutrix con-

cerning what was said and done on the journey and had unlimited opportunities to cross-examine her to the fullest extent. The record also shows that the defendant when on the witness stand unequivocally stated that the prosecutrix did nothing and said nothing throughout the whole journey to justify that she was a bad girl, except the manner in which she climbed into the front seat. So that, without conceding that the question was objectionable as calling for a conclusion, in view of defendant's admission, it was nonprejudicial.

It is insisted by appellant that the court erred in sustaining an objection to the following question asked defendant by his attorney on direct examination: "Have you ever been detained by the juvenile authorities?" The question was objected to as immaterial and irrelevant. The question was evidently intended to elicit the answer that defendant had never been detained by the juvenile authorities. If the fact that he had never been so detained tended in the least degree to prove his innocence of the crime charged herein, or to establish his reputation as a law-abiding citizen, the court should have permitted the question to be answered. But the answer sought to have been elicited could have no such tendency. As tersely stated in the Attorney General's brief:

"The most corrupt individual in the community may never have been detained by the juvenile authorities. A person may be detained by the juvenile authorities when he has done no wrong."

The objection was properly sustained.

It is also contended that the court erred in denying defendant's motion for a new trial. Among other matters presented in support of the motion was an affidavit of August Brinkman to the effect that immediately after the announcement of the verdict he met C. E. Mathews, foreman of the jury, at the door of the courtroom and remarked to Mathews that he was very sorry the jury

had brought a verdict of guilty of the higher offense, where-upon Mathews said:

"It is a wonder these boys are alive. I understand the girl's father does not know anything about it yet, and that he is a very hot-tempered man."

Affiant further stated that he was present during the whole trial, and that no testimony was offered which would enable the juror to make such a statement. The assumption of appellant's counsel is that the juror must have secured the information outside of court and that he was in a frame of mind inimical to defendant. The statement of the juror that "It is a wonder these boys are still alive" was not necessarily based on evidence received out of court. It was a conclusion that might have been based upon the evidence submitted to the jury. The statement concerning the girl's father may have been based upon the juror's personal ac-quaintance with her father, or something communicated to the juror after the verdict was rendered and before he reached the door. These probable reasons for the juror's remark of which appellant complains are not negatived by anything contained in the affidavit.

Finally, it is contended that the district attorney in his closing argument made remarks highly prejudicial to the substantial rights of the defendant. It does not appear that there was any objection made to such remarks at the time they were made, but the matter complained of was brought into the record by the affidavit of a person who claims to have heard the argument. The affidavit shows that de-fendant's counsel in the course of his argument stated "that, inasmuch as the prosecuting witness had voluntarily permitted herself to get into the automobile with two strong boys and to remain there and to be driven away by them, that even admitting her virtue at that time, she was starting on a course that might end more disaster-ously for her than the experience which she claims to have had by being assaulted by Winger and Brinkman, and that,

after all, her experience, unfortunate and bitter as it was, might be a blessing to her in disguise." In answer to this portion of defendant's argument it appears from the affidavit that the district attorney said "it reminded him of the position taken by the Germans when they sank the Lusitania; that the Germans would not admit they committed murder when they sent those many Americans to their death at the bottom of the sea, but contended that the Americans whose lives were lost committed suicide." It further appearing from the affidavit that the defendant is of German descent, it was assumed by affiant and also by defendant's counsel that the remarks were wholly unprovoked and were made to prejudice defendant in the minds of the jury.

In the first place we confess our inability to understand the meaning and import of the remarks made by defendant's counsel. Assuming as he did that the prosecutrix was a virtuous girl, we can conceive of no greater disaster that could befall her than that which according to her testimony occurred on that occasion. Yet counsel speaks of it as "a blessing in disguise." Such an argument justified most any kind of a reply the district attorney felt inclined to make, and especially if made without seasonable objection being interposed. But it is a far-fetched inference, to say the least, to assume that the district attorney intended anything more than to illustrate his view that the argument of defendant's counsel was manifestly rediculous and unworthy of serious consideration.

There are one or two other assignments of error relied on by appellant, but they possess less merit, if possible, than those we have considered.

We find no error in the record.

The judgment of the trial court is affirmed.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.